So next case for argument, Nicholson v. Peoria, Ms. Lynch Good morning. May it please the court, Stacey Lynch on behalf of the appellant, Donna Nicholson. It is our position that there are material issues of disputed fact that require reversal of the grant of summary judgment in this Title VII discrimination case. Plaintiff met her employer's legitimate expectations. That appears to be undisputed as even the defendant, Stephen Suttings-Gard, the former chief of police, admitted the plaintiff was very good at her job. The plaintiff suffered an adverse employment action when she was transferred to patrol and lost several benefits and perks she had as the asset forfeiture officer for the city. And the plaintiff also produced evidence of similarly situated employees, three other males including Scott Jordan, that were treated more favorably than the female plaintiff who participated in a statutorily protected activity. On the issue of pretext, defendants give poor performance in the interview for the asset forfeiture position as the reason why she was not selected as the asset forfeiture officer in 2012. Defendants have not given any reason as to why Donna Nicholson was not selected as the asset forfeiture officer in 2015. There is no evidence or argument that she performed poorly during the interview in 2015. Despite the mountain of evidence that the plaintiff presented in the district court that the male individual that received the asset forfeiture position, Officer Skaggs, was a poor performer, plaintiff undoubtedly should have been selected for the asset forfeiture position in 2015. The defendants would like this honorable court to forget about the 2015 interviews and the retaliation that occurred. Defendants rely heavily in their response on this concept that the chief of police for the city of Peoria had his hands tied. He simply did not have the authority or ability to reassign her to any other position other than patrol. Initially, the testimony of Stephen Settingsgard that was relied on by the district court should have been treated as unreliable. He testified in his deposition in this case that he submitted false testimony in an affidavit in Wisconsin federal court. But yet, the district court did not treat Stephen Settingsgard or his testimony as somebody capable of lying in federal court. The district court relied heavily on the evidence submitted by the defendant and the testimony of Stephen Settingsgard. And that was simply the wrong light. The suggestion that the police chief did not have the ultimate authority as a decision maker for promotions and transfers is not true. The defendant relies on the testimony of Stephen Settingsgard and on page 10 of their brief, they contend that Settingsgard had no authority to assign Officer Nicholson to any position other than patrol. And they cite to page 67 and page 153 of Settingsgard's deposition. But the evidence does not say what they claim it says. Settingsgard testified about transferring Officer Wilson, the officer that was accused of stalking Donna Nicholson, to patrol on page 67. He doesn't refer to transferring Donna Nicholson to patrol. Officer Jeff Wilson's transfer to patrol is not the subject of this lawsuit. Donna Nicholson's transfer to patrol is the retaliation that is the subject of this lawsuit. Page 153, also relied on by the defendant, discusses Donna Nicholson's transfer to patrol, but does not contain the testimony that the defendant claims it contains regarding Settingsgard having his hands tied. It's simply not there. They also rely on the collective... What was the alternative? Other than getting the job, what was the alternative to patrol? It's doing something other than the asset forfeiture. He could have put her in a detective position or any other position. The evidence really wasn't expanded on as to where else he could have put her, but I do believe the evidence does not support their position that his hands was tied with patrol. When other people, and this is in brief, and I'm sure you'd have an answer for it, but a number of other officers, when they left a specific assignment, they did go on to patrol when they were relieved of that assignment. Yes. Those officers were not similarly situated. Those individuals were not in specialty positions. That's the word I guess I was looking for. There are a limited number of specialty positions. That is true. Is that the kind of perk things that she was denied? Yes. As a specialty position, as a police officer for the city of Peoria, you get to come in in everyday street clothes and act like a detective. You don't have to carry around a 20-pound weight belt on patrol with all the equipment and everything that the patrol officers have to wear with or without the vest. But weren't a lot of the officers transferred to patrol at the same time she was? Your Honor, there were other officers transferred to patrol pursuant to that rotation policy, none of which were officers that had specialty positions like the plaintiff did. That had what? They weren't specialty positions. Of the individuals, there were at least three officers that we know of, all male. Well, the other side says more than 20 male officers and sergeants were transferred to patrol from specialty assignments at the same time. But if you look at the evidence, Your Honor, they were not actually from specialty assignments. What were they? They were not specialty assignments. So there were other positions they could have come from the detective bureau, but they were not specific specialty assignments like the liquor investigator, the asset forfeiture officer. They did not come from specialty positions like the asset forfeiture position the plaintiff was called. They came from, well, so specialty positions, there's a list of what are specialty positions? There is. Okay. And they include what in addition to asset forfeiture? In this case, the evidence was that the liquor investigator and the asset forfeiture officer were specialty positions. Any other ones? That's my question. Not that I specifically recall in the evidence that it came out, Judge. So we don't know whether these officers... Not on the record before us, other than the fact that it is my contention that the evidence shows that those individuals were not from specialty positions. That's your contention. But in my opinion, that should have weighed in my favor. It was disputed evidence, and that is a genuine issue, material fact, that should have gone to the jury. Well, was she the only one who was transferred to patrol from a specialty assignment? Yes. The only person, the only officer? Yes, she was. That is the evidence before this court. Yeah, but you said a whole lot of others, you don't know whether they were specialty assignments or what they are. I'm sorry, I don't understand. The other people who were transferred to patrol, supposedly from specialty positions, but you don't know that. No, I do not believe that the evidence supports their position that those individuals that were transferred from patrol were all from specialty positions. That's what the government, or the government, did the court find that or make any finding on that issue? The court basically, if I recall correctly in his order, relied on the defendant's evidence with respect to the specialty positions. Yes, which, again, should have weighed, if it was a disputed issue, which it was, and if it was viewed in the proper light, it should have weighed in plaintiff's favor. But that's not the way the district court weighed the evidence. Now, the defendant also relies on the... There's an exhibit, Exhibit 5514 or something, which lists a number of officers, of which she's one, so eight in all, who were transferred, with one exception, not from patrol, but from things like Vice Asset, that's her area, SID Vice, what's SID Vice mean? SID is, basically there was an entire unit, it was called the Special Investigation Division or Department, slash the Vice Unit. That was the unit of which the plaintiff was a member of. That was also the unit Scott Jordan was a member of. It was basically the City of Peoria's version of a SWAT type team, but they had specific specialty assignments in it, and if you were assigned to that division, you got special perks over time, take home vehicle, those types of things. I do not believe that there is any evidence that the defendant submitted that those individuals, those 20 officers that were transferred to patrol, at the same time, actually were specialty positions. I believe that's what the evidence will show you, and thank you, Your Honor. I would want to ask one question. Yes, Judge. The other side put a lot of emphasis on this interview. Yes. And what's the fellow's name that got it? Skaggs. Skaggs, apparently well-prepared, did a great interview. And I guess your client had a nine-page opening statement, I guess, at her interview. Yes, my client did that. What was that? As the asset forfeiture officer, and she'd been the asset forfeiture officer and brought in over $6 million from the City of Peoria for 10 years. 10 years? Over 10 at the time that she lost the position in 2012. When she went in there, she knew it was a lot of information. It's a lot of law. It's a lot of technical. She did what some lawyers do. She kind of scripted it to a certain extent. She read it. But the interesting thing is, when you look at the interview notes, what the comments are with respect to the interview notes, they say she performed poorly, but they don't indicate that she read this long statement. They indicated that she was due for a change. Well, 10 years, would you believe she was entitled to have that forever? Under the circumstances with respect to the individual that they put in there, absolutely she would be entitled to it, had they applied the rotation policy evenly. They did not apply the rotation policy evenly. They shut down the vice unit, they opened TOEFL, and they kicked the plaintiff out. That's what happened. Thank you. Thank you, Ms. Lynch. Mr. Fowler. Thank you, Judge. May it please the Court. A couple of quick things. The interview notes that the plaintiff read during the interview are contained in the record at page 485. Your Honors can see for themselves. The counsel referred to lawyers who read from notes. One of the things that I learned from court back many decades ago is that that's not a good persuasive way of presenting yourself. That's not an effective thing. The same concept applies during an interview. And, in fact, the plaintiff testified that she was not aware of anyone who had read notes like that during an interview. Counsel referred to specialty assignments, and she said that there was a list that the only two specialty assignments were the asset forfeiture and liquor control. I am not aware of any document in the record that says that there are two positions that are specialty assignments and that it's these two positions. I think that the term specialty assignments is more generic, and it applies to anything that's not patrol. The record here shows, in pages 495 and 496, that Your Honor was asking the question about the documents that shows the transfers. Those documents shows transfers of the individuals from the different positions that they were in to patrol. I think that those answer the questions. Well, the distinction might be, I don't know, where you don't have to wear the 20 pounds of paraphernalia for protection and for other law enforcement on these specialty assignments. So it seems to me it's when you're not patrol, you're something else. It may be labeled specialty. I think that's true, Judge. There may be other things, and it may have the same, I don't want to call it casual attire, but something other than wearing heavy stuff in the uniform. I think it's typically called civilian clothes. Is that what they call it? Yes, sir. They used to call it civvies. Yes, Judge. Okay. I'd like to address a couple of quick points. First, something that was addressed in the briefs and has not been addressed yet today, but I think is important, is the motion for recusal. There are, to my knowledge, three different situations where a judge may be required to recuse herself from a case. First is constitutional due process. That is not the issue in this case. This is not a constitutional due process case. The Caperton case that's cited in the briefs make it clear that constitutional due process for recusal does not involve circumstances where there's allegations of bias. It's been 40 years since he's worked for the city of Peoria. That's exactly right, Judge. The allegation here was bias. It's not a constitutional issue. It's a statutory issue. There's two statutory issues. First is Section 144. Second is Section 455. Both of them have been discussed in the briefs. Under a Section 144 recusal, it's initiated by a party by an affidavit, but the affidavit must include the details that show actual bias. It's not enough under a Section 144 analysis for there to be a possibility of bias. There must be an allegation of actual bias. In this instance, what the allegation was is, I believe Judge Mim was biased. That's not an allegation of fact. It's a conclusion that need not have been and was not properly accepted by the district court. This is not a Section 144 case. Was the foundation of that something other than the fact that he used to be city attorney? No, Judge. That was the only foundation. Because obviously if that were the case, then every time the city is involved in a lawsuit, which is probably pretty often, he would have to recuse. That's exactly right, Judge. Now, one thing I do want to correct or clarify, and this is a mea culpa to your honors. I wish I had addressed it or caught it when we were doing the briefs. I mentioned in my brief that this is a de novo issue. Counsel for the plaintiff has argued that it's a vice versa. They argued de novo. I argued manifest wait. The truth is that the cases from the Seventh Circuit go both ways. The case that I cited said. Hard to believe. I wish I had addressed that more thoroughly in the briefs. The bottom line here, let me address Section 455 very, very briefly. 455 is the obligation is on the judge him or herself. If there is a reasonable possibility of an appearance of impropriety or bias, then the judge is obligated to recuse him or herself. But again, the question, as your honor mentioned, is whether the circumstances suggest the reasonable possibility of bias. A 40-year lapse does not do that. We've cited the TSAC case that shows that eight years was too long. So the bottom line here is that this was not a recusal case. That motion wasn't properly presented. It was properly denied. What was Judge Mims' job when he worked for Peoria? Assistant Corporation Counsel. Oh, he wasn't in the police department? No, Judge. I see. It's just that he was part of the Peoria government. Yes, Judge. The bottom line here is even if your honor accepted the idea that the recusal issue is de novo, ultimately it doesn't matter. Because the key issue that's in this case and what plaintiff has argued is the summary judgment decision. The summary judgment decision is reviewed here de novo. It doesn't matter what Judge Mims did or didn't do because your honors are going to be reviewing the substance of the decision. While I don't think that Judge Mims did anything wrong, in fact, I'll say it stronger, Judge Mims did nothing wrong. That whole issue is irrelevant. The underlying issue is whether he properly granted summary judgment in favor of the city of Peoria and Chief Settings Guard. On that issue, the key argument that the plaintiffs have made is to suggest that he didn't follow Ortiz. Ortiz was issued one week after he issued the summary judgment decision. But when the issue was raised before Judge Mims on the motion to reconsider, he looked specifically at that, looked back at his order, and said, that's what I did. The standard that I followed was, in fact, whether employing the direct or indirect method, this court must determine whether a reasonable jury could find the defendants engaged in retaliatory action, appendix page 8. There are four different places in his summary judgment decision where he said exactly that. The ultimate issue is whether a reasonable jury could find for the plaintiff. The judge, when he was reviewing the motion to reconsider, looked at that, looked at that issue, and that's how he came down is to say, I did exactly what Ortiz said I should do, even though Ortiz hadn't been issued yet. The substance of the fact that he did, he looked at that and said that that was a reasonable decision by what they would have to prove pretext as opposed to the, and that would be the burden where it shifts. It gets away from McDonnell Douglas. The judge did it both ways. He did go through the McDonnell Douglas analysis, but he also then addressed, at the end of the day, the real question is, is there enough evidence here that a reasonable jury could find in favor of the plaintiffs? He did the alternative, and that's exactly what Ortiz says is that we should do it one of either of the two ways. Either way is appropriate. The key issue here, I guess, is to the extent that plaintiff is arguing the facts. Judge Mims' summary judgment decision and his decision on the motion to reconsider are incredibly thorough. He analyzed each one of the issues that were addressed. His decision was entirely proper. There is one thing that has been raised, actually two things, I guess, that plaintiffs have raised since then that Judge Mims didn't really address or didn't have an opportunity to address. One of the things that they've argued in the brief is that leadership, which they don't define, but when you look at the record sites for the position that they're taking, it refers to a particular sergeant or the union officers that were there, that leadership made statements. For instance, she claims at one point that Sergeant Machinsky gave now Lieutenant Carrie Davis a, quote, completely different reason for why she was not selected to remain in the asset forfeiture position. But when you look at the record, page 1343, deposition of Lieutenant Davis, page 26, line 21, what she testified is that Machinsky said one of the reasons why she wasn't selected to retain that position. He did not tell her a completely different reason as has been alleged. Counsel's also argued about the 2015 decision. This case was presented based upon an amended complaint referring to the removal from the asset forfeiture position in 2012 that was effective on January 6, 2013. There's nothing in the complaint that referred to 2015. There's nothing in the complaint, there's nothing in the record to suggest here that the plaintiff has satisfied any of the administrative requirements in order to pursue a claim based on not receiving the position in 2015 or, frankly, on anything that happened after 2012. That's not an issue that was before the district court, and I don't think it's an issue that this court should address. Has she been on patrol the whole time? To my knowledge, yes. After 2012? Yes, Judge. Since January 6th of 2013. Your Honor, I see my time is up. May I address one more brief issue? One of the things that's been addressed in the briefs is that the plaintiff says, we noted in our response that they hadn't made any arguments as to the claims against Steve Settingsguard individually. We noted that since they hadn't made any arguments about that, we assumed that the arguments against him had been waived. Their reply says that, no, we haven't waived that, that it's still live, although they still haven't addressed anything of substance. I would ask, Your Honors, that if you believe that those claims are still there, we didn't have an opportunity to respond to anything in our response because there was nothing in the plaintiff's original brief. If Your Honors believe that we should have responded, I would direct your attentions to the record at pages 218 through 223 and 1391 through 92. Those were the briefs that we submitted to the district court regarding the issues for Chief Settingsguard. Ultimately, we ask that Your Honors affirm the district court's decision. Okay. Thank you, Mr. Fowler. Ms. Lynch? Thank you, Mr. Chairman. I don't understand why you think Mims should be disqualified because he worked for the city of Peoria many years ago. Well, at the very least, I believe that information had to be disclosed. It is not the appellant's contention that every single time. Why? Because it's a lie. Well, I worked for the Justice Department for two years in the 1960s. Do I have to disclose that whenever I have a case brought by or against the Justice Department? If you had a history of 17 other cases in which every single time you decided in favor of the Justice Department or the government, yes, that is a demonstrated known bias that you would have to disclose. Wait a minute. Known bias? With the history that Judge Mims had in this case. That is much more likely to be affirmed by this court than a defendant. Just down the street in the state courthouse, there is a judge that worked for the city of Chicago over 20 years ago. Every time attorneys appear in front of her, she discloses the fact that she worked for the city of Chicago. She errs on the side of caution. What about Justice Kagan? Can she hear cases that come from the Solicitor General? Yes, she can. She can also recuse herself if she chooses to. Would she have to disclose it in some way? I believe she should. That's a little higher level, obviously. Everybody knows that Justice Kagan worked for. Not everybody knows. Well, everybody from Peoria knows that Judge Mims worked for the city, too. I disagree. Are you from Peoria? No, I'm not. That's why you don't know, maybe. Could be. That's why he should have disclosed it to us. It is not our contention that every single time the case appears in front of us, it has to be. Obviously, I focus more on the summary judgment issues. But I like to talk about burden shifting because that means the plaintiff actually met her prima facie case. Now, with respect to Ortiz, Judge Mims did look at Ortiz. But he said, I did it the right way. But he didn't do it the right way the first time. And with respect to Kerry Davis' testimony and counsel's remark with respect to that, one of the reasons why the point is they gave inconsistent reasons. They were all over the place. That testimony, that evidence should have weighed in plaintiff's favor. It simply did not. And with respect to 2015, on page 27 of plaintiff's brief, I do discuss the fact that the retaliation is continued. We don't have to go back and restart the administrative process every single time they retaliate against her, especially in this case because there's been so much of it. See, the reason that your point about Mims should have disclosed that he worked for PR, the reason it's ridiculous, it's a ridiculous position for you to take, is that everybody, all judges have a history going back to their childhood. And you wouldn't have any idea what in this person's history influences his votes as a judge unless you did a complete study of the person's history, where he went to school, who he dealt with, et cetera, et cetera, where he succeeded, where he failed, right? No one does that. No, I agree. Nobody does that. But you pick on one aspect, the fact that many years ago he worked for Peoria. It seems to me very unlikely that his having worked for Peoria many years ago affects the way he thinks about criminal cases today. And it wasn't a criminal case, but I disagree that the way that working for an individual that provides your paycheck... No, you're all wrong. People have jobs. They have new jobs many years ago. The original jobs do not leave some lifetime stamp that affects how they behave 20, 30, 40 years later. That's not how people's minds work. And to a certain extent, I agree, Your Honor. That's a distraction. You were talking about pretext. Just please finish that, why there's pretext. Yes, I believe there's sufficient evidence that they gave phony excuses that the real reason for her not getting that position was nothing but pretext. And with respect to 455b-3 and the recusal, both Judge Mim and Defense Counsel rely on 455b-3. It's simply plaintiff's position that 455b-3 does not apply because Judge Mim was not a government employee. He was an employee of the City of Peoria Corporation Counsel, and that's not anywhere close to being a government employee. And I believe that that shows the extent to which he was biased. Summary judgment was not appropriate in this case. The motion to reconsider did not prompt the district court to reevaluate the evidence the way it should have been reevaluated. Please restore the plaintiff's constitutional right to a trial. Thank you. Okay, well, thank you to both counsel, and the court will move on.